### SOUTHERN EXPORT CO. v. BAHAMAS–CUBAN CO.

(District Court, S. D. Florida. September 28, 1923.)

No. 1231.

1. **Principal and agent** ⟨Key⟩154(1)—**Shipper, delivering draft payable to charterer to unauthorized persons, responsible for loss.**

Where shipper gave a draft payable to charterer to two individuals, one of whom had executed the charter on charterer's behalf, but neither was authorized to receive the draft, and they converted the proceeds, shipper must bear the loss of his misplaced confidence.

2. **Shipping** ⟨Key⟩148, 185—**Payment of demurrage by shipper to owner not forced payment, which shipper is entitled to deduct from freight due libelant.**

Where the charter from owner to libelant authorized a lien on the cargo for demurrage, but the charter from libelant to shipper contained no such provision, owner had no lien on ·the cargo for demurrage and

payment of demurrage by shipper to owner was not a forced payment, which shipper is entitled to have credited on the freight charges due libelant.

3. **Shipping ☞185—In absence of express stipulation, shipowner has no lien for demurrage.**

A shipowner has no lien on a cargo for demurrage, unless such a lien is given by the terms of the charter, and then only on the cargo loaded on the ship under the charter, in which the lien is reserved.

In Admiralty. Libel by the Southern Export Company against the Bahamas-Cuban Company. Decree for libelant.

Martin H. Long, of Jacksonville, Fla., for libelant.

Cromwell Gibbons, of Jacksonville, Fla., for respondent.

CALL, District Judge. On August 12, 1920, the agents of the owner (the Emergency Fleet Corporation) chartered the Horado, or substitute, to the Southern Export Company, of No. 11 Broadway, New York City. The charter (a coal charter form) provided that cargo was to be loaded into the steamer not less than 200,000 feet per day. It also provided that the steamer should have a lien upon the cargo for all freight and demurrage, etc.

On August 13, 1920, the Southern Export Company chartered the vessel to the respondent; such charter being the regular form of charter for lumber shipments, providing for placing alongside the vessel not less than 200,000 feet per day. This charter was signed for the Southern Export Company by A. P. Gifford. By mutual consent the Diana was substituted for the Horado. The vessel reported and was loaded with 1,542,487 feet of pine lumber. Demurrage and freight at $19 per M. was claimed by the agents of the owner, and clear bills of lading were refused by such agents until payment of freight and demurrage charges were made. The freight charges demanded by the agents of the owners were $19 per M. The rate to be paid by respondent was $21 per M. It is this difference of $2 which is sought to be recovered in this action. The respondent, in order to receive clear bills of lading and have the steamer proceed on her voyage, paid the demurrage and freight charges to the agents of the owners. In addition to this amount, a draft for $1,000 was made payable to the Southern Export Company and delivered to Gifford, who executed the charter party on behalf of the Export Company. This draft was indorsed, "Southern Export Co., Jax., Fla., E. T. Hollingsworth, Treas., A. P. Gifford, Pres.," and the money obtained thereon by these two parties, and never came to the libelant or its benefit.

There are two questions to be decided in order to arrive at the liability vel non of the respondent to the libelant:

[1] First. Did the giving the draft to Gifford and Hollingsworth, payable to its charterer, and cashed by those parties, discharge pro tanto its obligation to libelant? The answer to this question depends on whether those parties or either of them had authority to receive same, either actual or apparent, from the acts of libelant. The testimony of Hollingsworth disaffirms that either he or Gifford acted for libelant. From his testimony it appears that these two, together with two others,

seem to have acted through this mythical name (Southern Export Company), and imposing upon the respondent in this manner thereby obtained this money. The evidence clearly demonstrates that the only authority Gifford had was to execute the charter. Nor does the testimony show any act by the libelant which estops it from denying the authority of the two (Hollingsworth and Gifford) to indorse checks or make collections of freight money due it. It is my opinion that the respondent must bear the loss of its misplaced confidence.

[2] The second question is: Was the payment of the demurrage by the respondent made under such circumstances as will permit it to insist that such payment be applied to the freight contracted to be paid libelant? Of course the sum of $19 per M. will be so credited, and is recognized as such by the libel as a payment pro tanto of the freight received from the charter party. This freight money was to be paid at the port of Jacksonville before the sailing of the vessel under the charter upon which the ship was loaded, and the amount paid for freight was an obligation of the respondent and a lien on the cargo, and if the respondent was obliged to pay same before the sailing of the ship, then it is entirely right and proper that it should receive the benefit of such payment.

[3] The respondent claims that it is entitled to have the amount paid the owner's agent for demurrage also applied to the payment of the freight money. As I understand the law, the shipowner has no lien for demurrage upon the cargo, unless such lien is given by the terms of the charter, and then only upon the cargo loaded upon the ship under the charter, in which the lien is reserved. And it is true that the charter from the owner to libelant reserves such lien, but the respondent is a subcharterer, and in his charter no such lien is reserved, and unquestionably the cargo was loaded under this last charter for the account of the respondent, and under these facts I am of opinion that no lien upon the goods of respondent existed in favor of the owners for demurrage. Such being the law, a payment of the demurrage by the respondent was not a forced payment of the debt due by the libelant, which the respondent can insist be credited to the freight due by it to the libelant.

It is difficult to see upon what theory the respondent was compelled to pay even the freight money to the agent of the owners before the sailing of the vessel, when the charter to the libelant required that payment be made in New York upon the conditions therein contained. But, however that may be, it was an exercise of arbitrary power upon the part of the owners to require the payment of demurrage before delivery of the bills of lading, as was done in this case, and such exercise it seems to me could have been controlled by proper proceedings and such payment avoided by the respondent.

A decree will be entered in favor of the libelant against the respondent for the amount due as per charter party.